UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

**JURY TRIAL DEMANDED**

CASE NO:

DEBRA RICHTER,

 Plaintiff,

v.

CARNIVAL CORPORATION,
a Panama corporation d/b/a
"CARNIVAL CRUISE LINES
 Defendant.
_____/

**COMPLAINT FOR NEGLIGENCE AND JURY DEMAND**

 The plaintiff, DEBRA RICHTER ["RICHTER" or "plaintiff"] sues the defendant CARNIVAL CORPORATION, a Panama company, d/b/a "Carnival Cruise Line" [hereinafter collectively "CARNIVAL"], and alleges:

 1. This is a maritime tort action where the incident complained of occurred aboard a passenger ship on navigable waters during traditional maritime activity (a cruise); and jurisdiction of this claim is further founded upon 28 U.S.C.A. §1332 (diversity jurisdiction).

 2. Plaintiff RICHTER is a U. S. citizen who resides in Ohio.

 3. CARNIVAL, at all relevant times, is a Panama corporation.

4. CARNIVAL, at all relevant times, has its principal place of business in Miami-Dade County, Florida.

5. This action is being pursued in this court, as opposed to state court as otherwise allowed by the Saving To Suitors Clause of 28 U.S.C. §1333 (1), because CARNIVAL unilaterally inserts a forum clause into its cruise tickets that requires its passengers to file cruise-related suits *only in this federal district and division*, as opposed to any other place in the world.

6. CARNIVAL, at all relevant times, owns and/or operates the cruise ship *M/S Carnival Legend* ["the subject vessel"].

7. CARNIVAL, at all relevant times, chooses to register the subject vessel in Panama.

8. CARNIVAL, at all relevant times, is a marine common carrier of passengers.

9. On June 25, 2014, and at all other relevant times, the plaintiff was a fare-paying passenger of CARNIVAL aboard the subject vessel during a cruise ["the subject cruise"].

10. CARNIVAL, at all relevant times, owed the plaintiff a non-delegable duty to exercise the reasonable care required of an ocean common carrier for the safety of a fare-paying passenger.

11. Alternatively, CARNIVAL and/or its employees, at all material times, engaged in certain affirmative undertakings, as hereinafter alleged; and in doing so acquired a duty to exercise reasonable care in those undertakings.

12. In the afternoon of June 25, 2014, the plaintiff was walking on the tile floor in the self-service Lido Café on Deck 9 of the subject vessel, when her foot abruptly slipped out from underneath her and she fell to the tile floor, severely injuring her left knee.

13. Upon information and belief, the tile in question either had poor slip-resistance properties and/or was contaminated with a foreign substance that greatly reduced its coefficient of friction, making the surface extremely slippery.

14. These conditions were either created by CARNIVAL and its employees or had been in place for a sufficient period of time so that the defendant and its employees either knew or should have known about them.

15. CARNIVAL, at all relevant times, knew, from previous experience on this subject vessel and the other vessels in its fleet, that the type of tile in question either lacked adequate slip-resistance *ab initio*, and/or would lose its slip resistance properties over time, so that the tile would become extremely and dangerously slippery, particularly when contaminated with water or other viscous substances.

16. CARNIVAL, upon information and belief and at all relevant times, chooses to make certain dining venues on its vessels self-service, such as the Lido Café on the Carnival Legend.

17. Carnival, at all relevant times, knows that passengers often spill food and drink on their way from the self-service areas to the seating areas; and Carnival knows that such passengers are not themselves equipped to promptly clean up such messes, which make the flooring extremely slippery and dangerous.

18. CARNIVAL, upon information and belief and at all relevant times, also knew in general that in the self-service, tiled restaurants on its vessels that open onto weather decks, relatively high exterior heat and humidity interact with the indoor air conditioning to deposit condensation on tile flooring that creates a dangerous slip hazard.

19. CARNIVAL, upon information and belief, over the years, has received actual notice that hundreds if not thousands of its passengers and crew have slipped and fallen on non-slip resistant, hard walking surfaces in the guest common areas throughout its fleet of vessels.

20. CARNIVAL, at all relevant times, knows that the risk of such falls to its passengers is heightened because of a general lack of passenger familiarity with vessels and their appurtenances.

21. The lack of slip resistance of the tile flooring in question, especially when wet or contaminated, violated the defendant's own internal slip-resistance standards; Regulation 13 of SOLAS ("Escape routes shall be maintained in a safe condition, clear of obstacles."); §14 of the International Maritime Organization's MSC/Circ. 735 (24 June 1996)("decks and floors should…have slip resistant surface."); §V302.1 ("Deck Surfaces") of the U.S. Access Board's, Draft Passenger Vessel Accessibility Guidelines ("Deck surfaces *shall be…slip resistant*."); and §11.12.1.2 of the American Society for Testing and Materials (ASTM)'s "Standard Practice for Human Engineering Design for Marine Systems, Equipment, and Facilities," ASTM F-1166-07 ("Walkways, passageways, decks, and all other walking surfaces shall have a non-skid surface sufficient to provide a coefficient of friction (COF) of 0.6 or higher *measured when the surface is wet*.").

22. CARNIVAL, at all relevant times, knows or should know that the materials and configurations it specifies, creates, and tolerates for some of the walkways of its vessels, *including the subject walkway*, are defined as unsafe in the referenced regulations, standards, and guidelines.

23. The slip-resistant properties and configurations of the walkways throughout CARNIVAL's fleet, at all relevant times, are created by and/or are under the direct control of the defendant.

24. CARNIVAL, at all relevant times, knew or should have known that the surface of the subject walkway where plaintiff slipped was *not* slip-resistant, contrary to the aforementioned standards and guidelines.

25. CARNIVAL, at all relevant times, knew or should have known that its passengers were slipping, falling, and/or being injured at the subject location and/or in other comparable walking areas on its vessels having similar flooring.

26. CARNIVAL, at all relevant times, knew or should have known that there were feasible, alternative flooring materials that would not become slippery when contaminated.

27. CARNIVAL, however, has never undertaken a systematic inspection and evaluation of its facilities (especially including the Lido Café on Deck 9 of the subject vessel) to locate non-conformities with the referenced regulations, standards, and guidelines.

28. CARNIVAL, at all relevant times, requires its crew to wear slip resistant footwear while walking in the tiled guest common areas; but does not require its passengers to do so.

29. Prior to the incident complained of, the subject tile flooring became and remained contaminated, either from moisture in the air, and/or from liquid substances spilled by other passengers, and/or by acts of CARNIVAL's own

employees. CARNIVAL, at all relevant times, knew or should have known of this condition.

30. Alternatively, CARNIVAL and/or its employees at all material times undertook to maintain the floor surfaces in question and/or to keep them clean and dry, and, as previously stated, thereby acquired a duty to exercise reasonable care in those undertakings.

31. CARNIVAL's own standard of care for the maintenance of the tile flooring in the Lido Café on Deck 9 of the subject vessel, at all relevant times, was to visually inspect each tile periodically; and to station crewmembers near foreseeable areas of floor contamination to warn off passengers until the areas became dry and safe.

32. Unfortunately, CARNIVAL's employees negligently failed to adhere to this standard on the day of the subject incident, and at all other relevant times.

33. CARNIVAL, at all relevant times, breached its duties of care by negligently creating and/or maintaining the aforementioned dangerous conditions on its vessel, and/or by negligently failing to take reasonable steps to become aware of their existence and properly assess them; and/or by negligently failing to correct the conditions in question; and/or by negligently failing to warn its passengers of the conditions, and/or to station crew to monitor the situation and assist passengers until the flooring was made safe.

34. As a direct and proximate result of this negligence, the plaintiff, while exercising reasonable care for her own safety, encountered the subject conditions, slipped, fell, and shattered her left knee, requiring major surgery.

35. The plaintiff was further injured in and about her body and extremities, suffered physical and mental pain, incurred medical expenses in the treatment of the injuries, suffered physical handicap, and aggravated a pre-existing condition. The injuries are either permanent or continuing in nature and the plaintiff will suffer her losses and impairments in the future.

36. The plaintiff has satisfied all conditions-precedent to this lawsuit.

WHEREFORE the plaintiff demands judgment for damages against defendant CARNIVAL, including prejudgment interest, and demands a <u>trial by jury</u>.

ERIKSEN LAW FIRM
2161 Palm Beach Lakes Blvd., Suite 410
West Palm Beach, FL 33409-6611
Tel:   866-493-9902 (Toll-free)
         561-684-7612 (Main)
Fax:   561-533-8715
mde@travelaw.com
Attorney for Plaintiff

By: /s/  Michael D. Eriksen
        MICHAEL D. ERIKSEN
        Florida Bar No. 316016